[Crim. No. 2618.   First Dist., Div. One.   Dec. 30, 1949.]

THE PEOPLE, Appellant, v. GROVER C. GEORGE, Respondent.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Appellant.

Hallinan, MacInnis & Zamloch and James Martin Mac-Innis for Respondent.

WARD, J.—This is an appeal by the People from an order of the superior court granting a motion of the defendant to set aside the information charging defendant with violating section 337a, subdivisions 2, 4 and 6 of the Penal Code. Defendant had previously been held to answer by a committing magistrate upon the "production of satisfactory testimony . . . that there is reasonable and probable cause to believe the defendant . . . guilty thereof . . .''

Section 337a provides in substance that every person "who . . . occupies, for any period of time whatsoever any room . . . with a book or books, paper or papers . . . or paraphernalia, for the purpose of recording or registering any bet'' (subd. 2) or "records, or registers any bet'' (subd. 4) or

"accepts any bet" upon the "purported result" of a contest of "speed . . . between . . . beasts" (subd. 6) is punishable as the section designates. "This section shall apply . . . to every person or persons who may do in a single instance any one of the acts specified . . ."

■ A police officer testified that he first approached defendant on March 25, 1949, standing in the doorway of a cigar store in Belden Place, San Francisco, at which store certain transactions thereafter took place culminating in the offenses charged in the information. Defendant was then in the company of a woman and a man, the latter being recognized by the officer as the bartender from the premises next door to the cigar store. The officer said to defendant, "Give me $2 on Pea Soup on the eighth to win." Defendant looked at the officer, then at the bartender, who made an affirmative nod, whereupon the officer gave defendant two one-dollar bills. To defendant's query "What initials?" the officer replied by stating his own initials, "P. L." The officer testified that he next saw defendant on March 29, 1949, the date mentioned in the information; that he went into the cigar store and found defendant behind the counter and the bartender standing on the customer's side of the counter. The officer laid two one-dollar bills on the counter and asked defendant "to give [him] two dollars on 'Out of the Blue' in the sixth to win." Defendant looked at the officer, then at the bartender, who nodded his head in the same manner as on the previous occasion. Also, as on the prior occasion, defendant asked the officer for his initials, to which he replied as before. The witness further testified that the serial numbers of the two one-dollar bills he had placed on the counter had been previously recorded in the presence of a sergeant of police. The officer then left the premises. On cross-examination the witness testified that no one touched the money in his presence, and that he "turned around to the bartender and had some conversation with him and paid no attention to what the defendant did." The conversation covered "what horses he [the bartender] had bets on."

Within a few minutes following the occurrence just related, a sergeant of police accompanied by another police officer entered the cigar store and found defendant behind the cigar counter and alone in the premises. The sergeant testified that he went behind the counter to question defendant and saw a quantity of currency lying on top of the cash register, and that defendant opened the register and placed the currency

inside the drawer on top of other currency. The sergeant thereupon ordered defendant to open the register and to permit him to examine the pile of currency, which he did, and found therein the two marked one-dollar bills. He testified that he then produced his book containing the previously recorded serial numbers and requested defendant to compare the numbers on the bills with those shown in the book, which defendant did "and they did so compare." For the purpose of the record the two serial numbers were recited. Defendant was asked where he had obtained the marked bills and replied that he "had received them from the bartender next door." As to further conversation had with defendant on that occasion, the sergeant testified: "I told him that he was booking there, and he denied it; and he said there was no book being made on the premises, so I proceeded to make a search of the premises to see if there were any bookmaking paraphernalia on the premises." The superior court trial judge ruled that the witness was qualified as an expert to testify as to certain documents, records and paraphernalia generally used by bookmakers or pool sellers in the area within which defendant was arrested. The initials "P. L." or the purported name of the horse, "Out of the Blue," did not appear on any of the papers introduced in evidence, but the sergeant's testimony in this connection was as follows: "I found a couple of markers on one of the back bar drawers. . . . Q. At this time I show you two sheets of white paper, on one sheet appears certain numbers and certain letters, the first sheet I have in my hand has the following numbers and letters. There is a 6 and another number that looks like a 6, and a period between it, and a F, and then the word 'Bell Rey,' and under that are the numerals 2-2-2. Then there is a long line in pencil, and below that is the number 7, and it looks like a 6 or a G; the letter F; and the two words 'Love' and 'Story,' and after them appear the numbers 2, 2, 2. There are certain other additional letters, and the numerals on that same sheet; and on the second sheet, also white and the same dimensions as the previous sheet, it appears to be the same dimensions as the previous sheet, there is the word 'Sweet-Hop' and below those two words are the numbers 3 and ½, 2 and ½, and 1 and ½. I show you these and ask you if these are the sheets of paper which you previously described as having been found in these particular premises on this particular day? A. Yes. . . . They were found on the drawer, what I call the back

bar drawer; that would be the back counter of the cigar store. Q. Now, in your opinion, what do those two pieces of paper represent? . . . [A.] Those are the betting markers. . . . Q. Are they a part of the paraphernalia used by bookmakers and pool sellers in the City and County of San Francisco? A. That is right. . . . Q. I show you what purports to be a pad of yellow paper, about an inch and a half in width and approximately four inches in length, and ask you if that is the pad which you previously described as having been found by you in these particular premises on that date? A. That is so. Q. Now, Officer, in your opinion, what does the writing which appears on the pad, on the first sheet of this pad, there appears the number 2 and the words 'Called On,' and below that in the same page, and immediately below it the figure 4 and the words 'My Empire,' and immediately below that is the number 5, together with the words 'Bar Pool.' What does that represent, in your opinion, Officer? A. One of those names, 'My Empire,' is the name of a horse. The other I cannot tell you. . . . My opinion of the name of the horses and the front marking would be the amount of the bets. It is very incomplete in so far as being a betting marker, there is not all the pertinent information on it. . . . Q. I show you at this time three sheets of yellow paper, the sheets are approximately 1½ inches wide and 4 inches long, and on each of the sheets appear certain writings and certain figures; I show you first a sheet on which is, on the first line the number 2 and the words 'Old Union,' and '(7B),' and immediately to their right and above in the upper right hand corner are the numbers 180 with a circle around them, and below those particular numbers and words appear certain other numbers and words in the same manner. Now I also show you two other sheets, on the second sheet the words and numbers are headed up by the words 'All White,' and at the top and immediately under that 'Cousin Ruth,' and there appears to the right of those two words, to be a parentheses and the word or number 2 below are certain other names and numbers, and on this third sheet is the word or words 'Sea Spray,' and to the right of those two words is the word 'Scratched,' and below it is the words or words 'Rude,' it could be 'Roman,' and it could be several other things, 'Rude,' something or other; and the number 2 and certain other writings and numbers on it. Now, in your opinion, what do those three sheets represent? A. Records of bets. Q. And as such, are they part of the paraphernalia used by bookmakers and pool sellers in the City and

County of San Francisco? A. That is one method that is being used.'' In answer to questioning by counsel for defendant, the sergeant's testimony was as follows: ''Q. The papers that have just now been shown you by Mr. Stout [counsel for the People], are not, in your opinion, markers? A. Yes, records of bets. . . . [Q.] As distinguished from markers? . . . [A.] Yes, that is so. . . . [Q.] In other words, they are not markers? . . . [A.] No; those particular pieces of paper are records of bets. A marker is also a record of a bet. There is no distinction between a marker and a record of bets; they are both records of bets.''

In *People* v. *Mitchell,* 27 Cal.2d 678, at page 681 [166 P.2d 10], the rule with respect to probable cause is stated as follows: ''In a preliminary. examination it is not necessary that a defendant be proved guilty beyond a reasonable doubt. 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (Pen. Code, § 872; . . .)'' In *People* v. *Nagle,* 25 Cal.2d 216, at page 222 [153 P.2d 344], the Supreme Court states: ''Section 1487(7) of the Penal Code provides that a party is entitled to discharge upon habeas corpus proceedings where he has 'been committed on a criminal charge without reasonable or probable cause'; 'sufficient cause,' therefore, means no more than that. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367]; *Cleugh* v. *Strakosch* (C.C.A. 9), 109 F.2d 330; *In re Martinez,* 36 Cal.App.2d 687 [98 P.2d 528].) 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. 'Reasonable and probable cause' may exist although there may be some room for doubt. (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568]; *Ex parte Heacock,* 8 Cal.App. 420 [97 P. 77]; *In re Mesquita,* 139 Cal.App. 91 [33 P.2d 459]; *Ex parte Vice,* 5 Cal.App. 153 [89 P. 983].) The committing magistrate, with the foregoing evidence before him had no alternative other than to order the defendants held for trial.''

The preliminary examination disclosed evidence that defendant occupied a space in a room with books, papers and paraphernalia for the purpose of recording and registering bets (Pen. Code, § 337a, subd. 2); that there was proof of the recording or registering of bets by defendant (subd. 4), and

that defendant accepted a bet upon a "purported contest, of . . . speed . . . between . . . beasts" (subd. 6). While the evidence is not identical, but similar, the following are cases that were tried and the evidence therein found sufficient to sustain a conviction: *People* v. *Vertlieb,* 22 Cal.2d 193 [137 P.2d 437]; *People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693]; *People* v. *Gilson,* 71 Cal.App.2d 584 [163 P.2d 98]; *People* v. *Abraham,* 67 Cal.App.2d 425 [154 P.2d 450], and *People* v. *Warnick,* 86 Cal.App.2d 900 [195 P.2d 552]. In the present case the superior court was called upon to determine only the sufficiency of the evidence presented on the preliminary hearing to meet the test of whether there was reasonable and probable cause to warrant the filing of an information.

It has been suggested that there is no proof that defendant owned or had any interest in the premises wherein the transaction took place. In *People* v. *Jerman,* 29 Cal.2d 189, at page 195 [173 P.2d 805], it is stated: "It is quite immaterial whether or not the recorder is the bookmaker or connected with the bookmaker with whom the bet is placed. Financial interest in the bet is not an element of the crime, and the provisions specifically include one who acts gratuitously."

The order appealed from is reversed.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 26, 1950.