[Crim. No. 2632.   Third Dist.   Nov. 2, 1955.]

THE PEOPLE, Appellant, v. DANIEL MARTIN,
Respondent.

Edmund G. Brown, Attorney General, Doris H. Maier,
Deputy Attorney General, and Vernon Stoll, District Attorney (Nevada County), for Appellant.

Harold A. Berliner for Respondent.

SCHOTTKY, J.—An information was filed charging the defendant above named with a violation of section 192, subdivision 3, of the Penal Code in that "on or about the 4th day of May, 1955, in the said County of Nevada, State of California, he did feloniously and without malice, while engaged in the driving of a vehicle in the commission of an unlawful act not amounting to a felony, with gross negligence, and while in the commission of a lawful act which might produce death, in an unlawful manner, with gross negligence, kill Andrew Patrick Monahan, a human being, and that the death of said decedent was the proximate result of the driving

of said vehicle by the said defendant at the time, place and in the manner as aforesaid.''

Upon defendant's arraignment in the superior court counsel was appointed to defend him, and thereafter his counsel moved to dismiss the information on the ground that defendant had been held to answer without reasonable or probable cause. After argument on said motion the court granted the motion and remanded the defendant to the custody of the sheriff for further preliminary hearing.

The People have appealed from the order dismissing the information and contend most earnestly that the order was erroneous. Before discussing these contentions we think it well to set forth certain well settled principles applicable to the instant appeal, which are well stated in *People* v. *Platt*, 124 Cal.App.2d 123 [263 P.2d 569], at page 130, as follows:

''The evidence necessary to justify an order holding a defendant to answer to the superior court is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt. All that is required is a reasonable probability of the defendant's guilt. (*Davis* v. *Superior Court*, 78 Cal.App.2d 25, 27 [177 P.2d 314].) 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (*People* v. *George*, 95 Cal.App.2d 425, 429 [213 P.2d 33]; *People* v. *Thomas*, 90 Cal.App.2d 491, 494 [203 P.2d 567].)

''On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (*Weber* v. *Superior Court*, 35 Cal.2d 68, 69 [216 P.2d 871].) A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to

connect the defendant with a crime shown to have been committed. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 55-57 [216 P.2d 859].)''

It appears from the record of the preliminary examination that defendant and a friend, Paul Pettipas, left Auburn about 11 a. m on May 4, 1955, and drove to Reno on Highway 40. During that day and evening the defendant had several drinks. Defendant and Pettipas left Reno for Auburn around 9 p. m., stopped in Truckee for a glass of beer and again at Cisco Grove. Prior to the time they reached Truckee and when they were stopped at the inspection station, the inspector suggested that Pettipas should drive, and not defendant. However, defendant allowed Pettipas to drive only a few miles and then defendant insisted that he again be allowed to drive as it was his brother's car. At Cisco Grove defendant and Pettipas while in the bar picked up the decedent who desired a ride to Auburn with them as his car had broken down. The decedent sat in the back seat and defendant and Pettipas in the front. Approximately one mile west of Cisco Grove where Highway 40 curved sharply in an S curve to the right and while defendant was driving at a speed of 55 to 60 miles per hour, he failed to make the turn to the right and the car went off the left side of the road. The vehicle made a complete somersault and the decedent was thrown from the car and killed.

The highway patrol officer who arrived at the scene at about 12 :45 a. m., testified that the accident occurred one mile west of Cisco Grove in Nevada County. The highway for many miles on both sides of the scene of the accident followed a mountainous terrain. The highway east of the scene was a level road with some curves but at the location of the accident there was a sharp S curve. Driving west and approaching this curve, you would turn to the left and sharply to the right. Adjacent to the highway at this point was the South Fork of the Yuba River which ran along the highway approximately 30 to 40 feet south of the edge of the pavement and about 20 feet below the level of the highway. The embankment between the river bed and the highway was quite rocky.

From the tire friction marks on the highway it appeared that on the south shoulder of the highway which was quite wide between the county line and where the vehicle went over the bank, there were tire marks 70 feet long. From where the tire marks left the highway to where the body

of decedent was found on the rocks, it was a distance of 25 feet, and a distance of 40 feet to where the automobile stopped. From the evidence on the rocks and boulders it appeared that the vehicle turned over end upon end, coming to a rest upon its wheels. The physical evidence also showed that the vehicle had negotiated a left-hand turn and continued straight across the highway instead of turning sharply to the right.

When the highway patrol officer saw the defendant at the scene, defendant was bleeding from the face and confused or dazed. The officer noticed an odor of liquor but could not tell whether defendant's actions were the result of drinking or shock. Defendant, however, in reply to a question by the officer as to whether he had been drinking, denied that he had. He also stated to the officer that he evidently lost control and did not see the turn while talking to his passengers.

In replying to appellant's contention that there was reasonable or probable cause for holding defendant to answer, defendant quotes from *People* v. *Nagle,* 25 Cal.2d 216, at page 222 [153 P.2d 344], as follows: " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused." Defendant also quotes the following from *Bentley* v. *Superior Court,* 122 Cal.App.2d 262, at page 263 [264 P.2d 990] : "It is well settled that reasonable or probable cause required to uphold the commitment of an accused under section 995, Penal Code, exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged."

Defendant then argues that the charge in the instant case requires a showing of "gross negligence" and quotes the definition of gross negligence given in *People* v. *Costa,* 40 Cal.2d 160, at page 166 [252 P.2d 1] : "Gross negligence has been repeatedly defined in the California cases as 'the want of slight diligence,' 'an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others,' and 'that want of care which would raise a presumption of the conscious indifference to consequences.' "

■ Applying the well settled rules hereinbefore set forth to the facts shown by the record in the instant case, we are satisfied that the evidence at the preliminary examination was sufficient to support the order holding the defendant to answer. Here the evidence disclosed that the defendant, after

having consumed several alcoholic drinks, and notwithstanding the admonition of the checking station inspector, nevertheless insisted on driving his brother's car on a mountain road, Highway 40, about one mile west of Cisco Grove, at a speed of 55 to 60 miles per hour. He failed to negotiate a sharp S curve in the road but instead drove his car off the opposite side of the road after skidding some 70 feet on the wide shoulder. The car somersaulted down the bank on the opposite side of the road from which defendant had been driving and the victim, who had been riding in the back seat, was thrown some 40 feet from where the car finally came to rest. The victim died from the injuries he received prior to the time the officers arrived at the scene of the accident. Subsequent to the accident, the defendant had the odor of alcohol on him and admitted to the police officer that he had been driving the car at the time of the accident, that he evidently lost control and did not see the turn while talking to his passengers.

The record shows that defendant drove from Auburn to Reno in the daytime and therefore was fully aware that Highway 40 was a mountainous highway with many curves. To drive back over said highway in the nighttime at a speed of 55 to 60 miles per hour in the manner that defendant was driving at the time of the accident would comply with the requirements of probable cause as above defined, that is, such conduct would warrant a man of ordinary caution or prudence in believing and conscientiously entertaining a strong suspicion that the accused was guilty of gross negligence.

The evidence shows also that defendant failed to comply with the provisions of section 597 of the Vehicle Code, which requires a driver of a motor vehicle when driving upon mountain highways to hold the motor vehicle under control at all times and as near the right-hand side of the road as possible. Here the defendant clearly failed to drive the vehicle in the manner required, but, on the contrary, endeavored to either cut the curve or was traveling too fast to negotiate a sharp curve in the road. There is also some evidence that defendant failed to comply with the provisions of section 525 of the Vehicle Code, which requires a vehicle to be driven on the right half of the highway (with certain exceptions which are not here pertinent). The accident occurred after defendant's car had driven off the opposite side of the road from that on which he was traveling and went off the embankment. Section 510 of the Vehicle Code provides that

no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic and condition of the highway, etc. It is therefore a reasonable inference from the evidence that defendant at the time of the accident was violating at least three sections of the Vehicle Act.

None of the cases cited by defendant involves similar factual situations and no useful purpose would be served by discussing them. Each case must depend upon its own facts.

It may well be that when the conduct of defendant is fully explained to a court or jury trying the facts, he will not be convicted, but the question of his guilt or innocence is not now before this court. The present issue does not concern the quantum of evidence necessary to sustain a judgment of conviction but only the question of whether the magistrate at the preliminary examination, "acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which defendant participated."

In view of the foregoing we conclude that the court erred in dismissing the information.

The order appealed from is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 10, 1955, and respondent's petition for a hearing by the Supreme Court was denied November 30, 1955.