[Crim. No. 4215. First Dist., Div. One. June 7, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN RILEY, Defendant and Respondent.

Morris M. Grupp for Defendant and Respondent.

MOLINARI, J.—This is an appeal by the People from an order setting aside an information against respondent on the ground that respondent had been committed without reasonable and probable cause.

### Question Presented

Was the evidence adduced before the committing magistrate sufficient to hold respondent to answer for the offenses charged in the three counts of the information, or any of them?

## Statement of the Case

A complaint was filed in the justice court charging respondent in three counts with the crime of grand theft. (Pen. Code, § 484.) Count One charged him with taking $300 from one John M. Cooper; Count Two with taking $750 from one Clarence A. Hulbert; and Count Three with the taking of a Caterpillar tractor of the value of $750 from one James B. Smith. After a preliminary hearing, respondent was held to answer on all three counts, whereupon an information thereon was filed in the superior court. Respondent thereafter made a motion to set aside the said information pursuant to Penal Code section 995[1] on the ground that he was committed without reasonable or probable cause. This motion was granted by the court below as to all counts of the information and the People have appealed from the order setting aside the information. In determining the sufficiency of the evidence to show reasonable or probable cause for the information we shall consider the evidence as to each count separately as it appears from the record of the preliminary examination.

Before proceeding to do so we shall reiterate the fundamental legal principles which are applicable. In section 872 it is provided that a defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof. . . ." Section 995 provides that an information must be set aside by the court in which the defendant is arraigned, upon his motion, where the defendant has been committed without reasonable or probable cause. " '[S]ufficient cause' is equivalent in meaning to 'reasonable or probable cause.' " (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) Reasonable or probable cause means such state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]; *Perry* v. *Superior Court, supra*; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Reed,* 202 Cal.App.2d 575, 581 [20 Cal.Rptr. 911].) Reasonable or probable cause may exist although there may be some room for doubt. (*People* v. *Nagle, supra.*) Such cause requires only a reasonable probability of guilt. (*People* v. *Mar-*

---

[1]All code section references herein are to the Penal Code unless otherwise indicated.

*tin,* 136 Cal.App.2d 709, 710 [289 P.2d 69].) Accordingly, the " ' " [r]easonable or probable cause," required to uphold the commitment of a defendant . . . , exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. . . .' " (*People* v. *Martin, supra,* p. 710; *People* v. *George,* 95 Cal.App.2d 425, 429 [213 P.2d 33].) The evidence necessary to establish " 'reasonable or probable cause' " need not be sufficient to support a conviction, that is, it need not establish guilt beyond a reasonable doubt. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 56 [216 P.2d 859]; *People* v. *Martin, supra.*) ▮ Our function, as an appellate court, like that of the trial court, is to determine whether the magistrate who committed respondent, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which respondent had participated. (*Weber* v. *Superior Court,* 35 Cal.2d 68, 69 [216 P.2d 871]; *People* v. *Martin, supra.*) ▮ "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction." (*People* v. *Platt,* 124 Cal.App.2d 123, 131 [268 P.2d 529].) A court may not substitute its judgment as to the weight of the evidence for that of the magistrate; accordingly, if there is some evidence to support the information, the courts will not inquire into its sufficiency. (*People* v. *Platt, supra.*) It is well established, therefore, in accordance with the foregoing principles, that an information will be set aside, under section 995, only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (*People* v. *Platt, supra,* p. 131; *Lorenson* v. *Superior Court, supra,* pp. 55-57.)

The crime of theft is defined in section 484. Insofar as applicable to the case at bench that section provides as follows: "Every person who shall . . . fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . or personal property . . . is guilty of theft." Grand theft is committed, insofar as applicable to the present case, when the money or personal property taken exceeds $200 in value. (§ 487, subd. 1.) ▮ Since the 1927 consolidation by the Legislature of the several larcenous crimes into one

single crime of theft under section 484, indictments and informations charging theft need only allege an unlawful taking and need not be concerned with the technical differences between the several types of theft. (*People* v. *Ashley*, 42 Cal.2d 246, 258 [267 P.2d 271].) ▮ Accordingly, as stated in *Ashley*: "Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." (P. 258.) ▮ The elements of the several types of theft included within section 484 have not been changed, however, and a holding to answer for the crime of theft can be sustained only if the evidence discloses elements of one of the consolidated offenses sufficient to constitute reasonable and probable cause that such offense has been committed. (*People* v. *Ashley*, *supra*.) ▮ Theft, as defined in section 484, includes embezzlement, theft by trick and device, and theft by false pretenses. (*People* v. *Jones*, 36 Cal.2d 373, 376-377 [224 P.2d 353]; *People* v. *Ashley*, *supra*; *People* v. *Reinschreiber*, 141 Cal.App.2d 688, 696 [297 P.2d 658].) ▮ Accordingly, the holding of the magistrate in the instant case, as to each count, must be affirmed if there is sufficient evidence to support it on the theory of theft by trick and device, or by false pretenses, or by embezzlement. (See *People* v. *Jones*, *supra*, p. 375; and see *People* v. *Reinschreiber*, *supra*, p. 696.)

▮ The variety of theft known as embezzlement consists of the fraudulent appropriation of money or other property by a person to whom it has been entrusted. (§ 503.) Therefore, when one receives property lawfully by virtue of the fact that it is entrusted to him, and thereafter he violates his trust and fraudulently converts the property to his own use or to a use not authorized by the owner, his theft is called embezzlement. (See §§ 503-508, incl.; and see *People* v. *Swanson*, 174 Cal.App.2d 453, 457 [344 P.2d 832]; *People* v. *Hewlett*, 108 Cal.App.2d 358, 367 [239 P.2d 150].) ▮ The elements of an embezzlement are: (1) The accused must be the agent or bailee of the prosecuting witness in holding the allegedly embezzled property; (2) the property must actually belong to the alleged principal; (3) it must be lawfully in the possession of the accused at the time of the alleged embezzlement; (4) the accused must have been guilty of the conversion which the statute denounces; and (5) there must be shown an intent on the part of the accused to deprive the

owner of his property unlawfully. (*People* v. *Hewlett, supra*; *People* v. *Swanson, supra*; *People* v. *Cannon,* 77 Cal.App.2d 678, 689 [176 P.2d 409].)

The form of theft known as larceny by trick and device is committed when a person by means of fraud, trick, device, artifice, or false promises, which he has no intention of performing, obtains possession of property owned by another with the felonious intent to steal it from such owner. (*People* v. *Tomlinson,* 102 Cal. 19, 23 [36 P. 506]; *People* v. *Kirsch,* 204 Cal. 599, 602 [269 P. 447].) In this species of theft the owner of the property does not intend to transfer his title to the property to the person so obtaining its possession. (*People* v. *Tomlinson, supra*; *People* v. *Lafka,* 174 Cal.App.2d 312, 315 [344 P.2d 619]; *People* v. *Bartges,* 126 Cal.App.2d 763, 770 [273 P.2d 49].) The elements of theft by trick and device are, accordingly, as follows: (1) the obtaining of the possession of the property of another by some trick or device; (2) the intent by the person so obtaining possession to convert it to his own use and to permanently deprive the owner of it; and (3) that the owner, although parting with possession to such person, does not intend to transfer his title to that person.

In that form of theft known as theft by false pretenses the crime is committed when a person knowingly and with design uses some fraudulent representation or pretense as a means of obtaining the property of another, who, in parting with it, intends to transfer title as well as possession to the person who obtains the possession. (*People* v. *Jones, supra,* 36 Cal.2d 373, 377; *People* v. *Ashley, supra,* 42 Cal.2d 246, 258; *People* v. *Reinschreiber, supra,* 141 Cal.App.2d 688, 697.) In order to support a conviction of theft by false pretenses these factors must be established: (1) that the defendant made a false pretense or representation; (2) that the representation was made with intent to defraud the owner of his property; and (3) that the owner was in fact defrauded in that he parted with his property in reliance upon the representation. (*Perry* v. *Superior Court, supra,* 57 Cal.2d 276, 282-283; *People* v. *Ashley, supra,* p. 259; *People* v. *Jones, supra,* p. 377; *People* v. *Platt, supra,* 124 Cal.App.2d 123, 131-132.) In this state there are two significant distinctions between theft by trick and device and theft by false pretenses: (1) In the former the owner intends to part with possession of the property but not with title thereto, while in the latter the owner intends to transfer title as well as pos-

session (*People* v. *Reinschreiber, supra,* p. 697; *People* v. *Jones, supra,* p. 377; *People* v. *Ashley, supra,* p. 258; *People* v. *McCabe,* 60 Cal.App.2d 492, 496 [141 P.2d 54]); and (2) corroboration is required to prove theft by false pretenses (§ 1110; *People* v. *Ashley, supra,* p. 259; *People* v. *Reinschreiber, supra,* p. 697), but corroboration is not required to prove theft by trick and device. (*People* v. *Reinschreiber, supra,* p. 697; *People* v. *Bartges, supra,* 126 Cal.App.2d 763, 771; *People* v. *Lafka, supra,* 174 Cal.App.2d 312, 316.)

### Count One

Three witnesses were called at the preliminary hearing concerning the offense charged in Count One. They were John M. Cooper, Arthur Taylor and Betty Rankin. Cooper testified as follows: that he was a truck owner and operator and a resident of Ukiah, California; that he had known respondent for about 10 years and had had previous business dealings with him; that on January 29, 1962, he received a telephone call from respondent who said he was calling from Reno, Nevada; that in said conversation respondent told him that he could obtain certain transmissions for him in Reno, if he would wire respondent the sum of $300; that said call was on a Monday; that in said telephone conversation respondent told him that he would have the transmissions in his place of business on Tuesday (the record does not indicate whether this reference was to the following day or the following Tuesday); and that he wired respondent the $300 on the same day he received said telephone call. Cooper testified further: that he next saw respondent two weeks later when he went to respondent's home in Ukiah and inquired as to where the transmissions were; that this was on a Saturday; that respondent replied they were still in Nevada; that they were in respondent's truck which had broken down in Fallon, Nevada; that he offered to go get them with his own truck, but that respondent told him that this was not necessary because he was going to Fallon on Sunday or Monday and would bring the transmissions to Cooper on Tuesday. Cooper also testified that as of the date of the preliminary hearing on April 3, 1962, he had not received any transmissions from respondent.

Taylor, who is Cooper's brother-in-law, testified that on February 3, 1962, he met respondent in Las Vegas, Nevada, at which time respondent told him his truck had broken down in Fallon, Nevada, and stated " 'I wished I'd known you boys were coming over here. I would have had the transmissions

and stuff sent this way instead of going over the other way.' ''
Taylor also testified that a week later he accompanied Cooper
to respondent's home and related substantially the same con-
versation as above testified to by Cooper.

The witness Rankin is a telegraph operator who identified
the money order receipt which Cooper testified he received
from the telegraph office when he remitted the money by wire
to respondent.

 Applying the principles hereinbefore set forth to the
facts shown by the record in the instant case, we are satis-
fied that the evidence at the preliminary hearing was sufficient
to hold respondent to answer as to Count One. In our opinion,
the magistrate was warranted in conscientiously entertaining
a strong suspicion that respondent had committed either the
crime of theft by trick and device or theft by embezzlement.
In the present case Cooper delivered $300 to respondent to be
applied by the latter to a particular purpose, i.e., the purchase
of certain transmissions. Cooper did not intend to part with
title to the $300; but only to its possession. Respondent rep-
resented that he would deliver the transmissions to Cooper
on a day certain. He did not do so; nor had he delivered
them to Cooper at the time of the preliminary examination.
He did not voluntarily offer any explanation for their non-
delivery. When inquiry was made as to where they were,
the explanation was that they were on a truck which had broken
down in Nevada, but that he would deliver them in a few
days. Again, respondent did not make the promised delivery.
These circumstances, when coupled with the rejection of Coop-
er's offer to go and pick up the transmissions himself, would
warrant a reasonable man to entertain a strong suspicion that
respondent had not acquired the transmissions at all; that he
did not intend to acquire them when he made the representa-
tions to Cooper; that respondent made the representation as
to their availability with the preconceived intention to ap-
propriate the $300 to his own use; and that he subsequently
did convert it to his own use instead of applying it to the
purpose contemplated by Cooper. The intent to de-
fraud is a question of fact to be determined from all the facts
and circumstances of the case; and it may be, and usually
must be, inferred circumstantially. (*Perry* v. *Superior Court*,
*supra*, 57 Cal.2d 276, 285; *People* v. *Caruso*, 176 Cal.App.2d
272, 278 [1 Cal.Rptr. 428].) As stated in *People* v.
*Lafka*, *supra*, 174 Cal.App.2d 312: ''It is well settled that a
loan of money induced by a fraudulent representation that

it will be used for a specific purpose accompanied by an intent to steal amounts to larceny by trick and device.'' (P. 315; citing cases.)

The evidence was also sufficient to justify the magistrate in holding respondent to answer for the crime of theft by embezzlement.[2] There is ample evidence to show that respondent purported to act as the agent for Cooper for the purpose of purchasing and delivering the transmissions in question. While the magistrate, as the trier of fact, could have concluded that at the time of taking the money from Cooper respondent did not have the preconceived design and intention of appropriating the money to his own use (thus precluding the crime of theft by trick and device), there was sufficient evidence to warrant a reasonable suspicion that respondent thereafter appropriated the $300 to his own use. The statements and conduct of respondent hereinabove referred to and respondent's default in delivering the transmissions were sufficient to arouse a strong suspicion that he did not use or attempt to use the money in accomplishing the purpose for which it had been entrusted to him. (*People* v. *Costello*, 107 Cal.App.2d 514, 517-518 [237 P.2d 281]; see *People* v. *Hall*, 55 Cal.App.2d 343, 349 [130 P.2d 733].)

### Counts Two and Three

These counts involve the same ''Caterpillar 15'' tractor. The testimony of James B. Smith discloses the following: that on April 1, 1961, Smith and respondent entered into negotiations for the sale of a tractor to Smith for $400, the deal being consummated on April 5, 1961, when the sum of $400 was paid by Smith to respondent's attorney by check; in making the sale respondent identified the tractor by way of a photograph, the back of which bore the notation ''Caterpillar 15 SNPV 3958''; some five days after delivering the check Smith received a bill of sale to the tractor by mail from respondent's attorney; said bill of sale bore the typewritten words ''One used Caterpillar crawler tractor Model #15, serial Number SNPV 3958'' and a signature signed ''John Riley''; Smith instructed respondent to deliver the tractor to one Jim Kelly in Ukiah for delivery to the docks for shipment to Guam; Smith had several conversations with respondent

---

[2]Section 506 provides: ''Every . . . agent . . . or person otherwise entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust , , , is guilty of embezzlement, , , .''

thereafter and was told by respondent that he was going to pick up the tractor and deliver it; that the said tractor was never delivered to him and that he never saw the tractor. Smith also testified that he had had other dealings with respondent consisting of the purchase of two other tractors from respondent, which were shipped to the Phillipines; the sale by Smith to respondent of a GMC truck and an asphalt roller, and the performance of various services by respondent for Smith, including the welding of a track on a tractor, putting a tractor together and buying a hood for a tractor, for which services and materials Smith advanced the sum of $250 to cover part of the cost thereof.

The examination of Smith discloses that on June 1, 1961, Smith made out a bill of sale to respondent for a GMC truck with a Ledford roller. The words ''Caterpillar 15 tractor'' appeared on the bill of sale which was introduced at the preliminary examination. Smith testified that the words '' 'one Caterpillar 15 tractor' '' were not on the bill of sale when he signed it and that they were added subsequent to the time that he delivered the bill of sale to respondent; that these words were not added by him; and that with the exception of his name and the date, the writing on the bill of sale, including these words, was all in respondent's handwriting.

Smith testified further: that he thereafter went to Guam, and on July 1, 1961, wrote a letter to respondent from Guam requesting that their respective accounts be adjusted, directing respondent to credit the sum of $250 which he had advanced to respondent, advising respondent that if the latter had not already shipped the tractor to Guam that he proceed to sell it for the sum of $400, or as near this sum as he could obtain, and requesting that respondent remit the proceeds of the sale to him, together with a statement as to whether he owed anything to respondent. Smith also testified further that he did not believe that he owed respondent anything; that respondent did not send him the $400 ''covering that Cat 15''; that some time after the letter was written on July 1, he encountered respondent and requested that they get the matter settled up; and that respondent replied '' 'Someday I'll flip you for it' '' and drove off.

The testimony of Clarence A. Hulbert was substantially as follows: that on April 25, 1961, he went to respondent's place of business to buy a ''Cat 15'' tractor he was interested in; that respondent told him that he owned the tractor in question; that it needed certain repairs; that certain repairs

were made by respondent; that respondent sold him the tractor for $750; that he paid respondent by a personal check on which was written " 'PV 3958' "; that he took the tractor home and operated it for 60 hours after which it blew up; that he still has the tractor in his possession; and that no one has attacked his title to it.

The foregoing evidence is sufficient to justify the magistrate in holding respondent to answer as to Counts Two and Three. The weighing of the evidence and the credibility of the witnesses, as well as the determination of any conflicts in the evidence were within the magistrate's province. There is sufficient evidence from which the magistrate could conclude that respondent sold the tractor in question to Smith for $400 and then sold the same tractor to Hulbert for $750. The evidence was sufficient to warrant the conclusion that when respondent sold the tractor to Smith, and gave the latter a bill of sale thereto, the tractor became Smith's property and respondent was then under a duty to deliver it to Smith.[3] A sale of such property by respondent without Smith's authority, particularly where the proceeds of the sale were not remitted to Smith, would warrant a strong suspicion that respondent had appropriated said property and its proceeds to his own use and justify a holding as to Count Three. While there was evidence of a bill of sale showing a transfer of title to the tractor in question from Smith to respondent as of June 1, 1961, Smith denied that the said tractor was included thereon when he executed the bill of sale. This was a conflict for the magistrate to resolve. Moreover, the purported sale from respondent to Hulbert was made prior to June 1, 1961, i.e., on April 26, 1961. Credible evidence was also adduced by Smith that he did not authorize respondent to sell the tractor until July 1, 1961. Assuming *arguendo* that there was sufficient evidence from which the magistrate could conclude that Smith had, by his conduct, authorized respondent to sell the tractor, we still have sufficient evidence to warrant the reasonable suspicion that respondent appropriated the proceeds of the sale to his own

---

[3]Section 504a provides: "Every person who shall fraudulently remove, conceal or dispose of . . . any personal property or effects of another in his possession, under a contract of purchase not yet fulfilled, . . . is guilty of embezzlement."

Section 507 provides: "Every person entrusted with any property as bailee, . . . or with any power of attorney for the sale or transfer thereof, who fraudulently converts the same or the proceeds thereof to his own use . . . is guilty of embezzlement."

use when he did not remit or make an accounting of such proceeds, or any part thereof, to Smith.

As to Count Two (the Hulbert transaction) there is sufficient evidence to justify the belief and strong suspicion on the part of the magistrate that respondent committed the crime of theft by false pretenses. The evidence is sufficient to warrant the inference that respondent made a false representation with the intent of defrauding Hulbert of the sum of $750. That evidence consists of the representation that on April 25, 1961, respondent owned the tractor. Hulbert relied on that representation and parted with his property, i.e., the sum of $750. We thus have evidence that respondent obtained possession of said sum by such representation. The evidence hereinabove discussed with reference to respondent's collection and retention of said sum warrants an inference that respondent intended to convert the said sum to his own use and to permanently deprive Hulbert of it. The evidence justifies, further, the inference that Hulbert parted with both the possession and the title to said sum in exchange for title to a tractor which respondent fraudulently represented he owned.

The order setting aside the information is reversed as to all counts thereof.

Bray, P. J., and Sullivan, J., concurred.