[Crim. No. 8519. Second Dist., Div. Three. July 22, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. DANIEL JAMES AZEVEDO, Defendant and Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and James W. Powell, District Attorney (San Luis Obispo), for Plaintiff and Appellant.

Andrew Renetzky and Harry C. Murphy for Defendant and Respondent.

FORD, J.—The People have appealed from an order of the superior court granting the defendant's motion to set aside an information. The information contained three counts, the offenses charged being respectively burglary (Pen. Code, § 459), receiving stolen property (Pen. Code, § 496), and grand theft (Pen. Code, §§ 484, 487). The defendant's motion was made under the provision of section 995 of the Penal Code that the information must be set aside, on the motion of the defendant, by the court in which he is arraigned when the defendant has been committed without reasonable or probable cause.

The evidence as set forth in the reporter's transcript of the preliminary examination will be summarized. Raymond Childers testified that he resided in Atascadero with his wife and his two sons, Arthur and John. In February of 1962, Arthur was 15 years old and John was 17 years old. When Mr. Childers returned to his home about 5:10 p.m. on February 19, 1962, he went into the barn and discovered that an impact wrench and drill were missing. On February 22, 1962, he went to the building which contained his gun room, unlocked the door and entered. He had not theretofore been in that room at any time after he found articles missing

from the barn. Seven or eight guns were no longer there, one of which was a ''Schneider, double barrel, hammerless shot gun'' bearing serial number 919. Ammunition boxes had been opened and ''various things were moved from wherever'' the witness usually kept them. When deputy sheriffs arrived, it was found that a window had been removed. In response to an inquiry as to what he observed, Mr. Childers testified: ''The window—the hinges were torn from the wood, it looked like that the window had been brought down and then just pried the hinges off.'' The building was secured by means of two locks, the keys to which Mr. Childers always had in his possession. He had given no one permission to enter the building and take the missing items. He later recovered his impact wrench at a garage in the vicinity.

Sergeant Dudley of the Sheriff's Office of San Luis Obispo County testified that he talked to the defendant on several occasions after the property of Mr. Childers was taken. In a telephone conversation on May 28, 1962, he asked the defendant whether he was in possession of a Schneider ten gauge double barrel shotgun, and the defendant replied that he was. Sergeant Dudley further testified: ''I asked him where he got it, [and] he said that he bought it from John Childers. I asked him for how much, [and] he said $25.00. . . . I asked him if he knew it was stolen and he said he did not.'' The defendant further said that at first John Childers had wanted the defendant to lend him $45 on the shotgun and the impact wrench, but the defendant said that he would lend him $25 ''for the gun and if he didn't pay him back in 30 days, he would consider the gun his.''

On June 3, 1962, Sergeant Dudley talked to the defendant at a residence in Atascadero. He related the conversation in part as follows: ''I asked him if he had the shotgun with him, [and] he advised me that he did and I requested to see it, and he produced the shot gun. . . . I asked him if he had been involved in it [the burglary], [and] he said no.'' The officer testified that the gun which the defendant delivered to him on June 3 was ''a double barrel, ten gauge Schneider shot gun, hammerless, bearing serial number 919.''

After the defendant had been arrested, Sergeant Dudley talked to him in jail on either June 14 or June 15. With respect to that occasion, the officer testified as follows: ''. . . I went back to the cell that he was in and at that time he did admit to me that he knew the gun was stolen. . . . He

advised me that he received a call from Arthur Childers the day of the burglary. He went out to the house and there was conversation between them at that time, I believe, but while they were at the house Arthur and, I believe he told me John, brought these things, these articles, the ten gauge shot gun, the lantern, the two burner stove and the binoculars out of the gun room or gun house, it has been called both. I believe he said the first time he saw them, they were setting at the door of this gun house. At that time, he told me also that they loaded the things into the trunk of his car and that he and John—I don't recall whether John—whether he said Arthur was with them at that time or not, but he and John drove out to the Park Hill District. . . .'' The defendant said that the articles, with the exception of the shotgun, were unloaded at the residence of another person and placed in the garage. The officer further testified as follows: ''Q. . . . Now, you mentioned that he indicated that he knew these items were stolen? A. Yes. Q. Did he indicate how he knew that? A. It was either John or Arthur told him that the stuff belonged to their dad. Q. When did he indicate that they told him this? A. That was prior to loading the car. . . . Q. Now, you indicated that the defendant told you that he knew these articles were stolen. Did he indicate to you when he was notified that these articles were stolen? A. As near as I can remember, it was before they put the articles in the car that either John or Arthur told him that the things were stolen. Q. Now, did he tell you when or where John Childers was during this transaction? A. At that time, talking to him at that time, I am sure that he told me that John and Arthur were bringing the stuff out of the house. Q. And were they putting it outside the house? A. Right outside the door of the gun house.'' Sergeant Dudley also testified as follows: ''Now, during the conversation where he told me this, he also told me that after that I believe it was, they went to San Luis and attempted to sell the shot gun. The man only offered them $22.00 for it and John Childers told him his dad had been offered $400.00 for it . . . and John wouldn't sell it to the man and then the defendant took possession of the shot gun.'' The officer further stated that the defendant said that John asked him where they could sell the impact wrench and he replied that a particular garage employee would probably buy it. They went to the garage in Atascadero and there John Childers sold it to another man for $16. Sergeant Dudley said that during his conversation with the defendant

at the jail, no promises were made to the defendant and no use was made of threats or coercion.

While under cross-examination Sergeant Dudley testified that the defendant never used "these exact words" that he knew the articles had been stolen. The officer testified in part: "I believe I asked him, did he know that these were stolen from Mr. Childers. I believe that is the wording of the question that I asked him, and he said yes." Another portion of the cross-examination of Sergeant Dudley as to the defendant's statement made at the jail relating to what occurred on the Childers' premises was as follows: "Q. He told you that they had some of this stuff there? A. I don't believe he—he said that they told him that he had this stuff there. He observed it there by the door of the gun house or gun room. Q. What did he observe? A. He told me the stove and the lantern and I believe one of them went in and got the shot gun. I don't know whether it was the defendant or one of the two Childers' boys."

█ The governing law was stated by this court in *People v. Platt*, 124 Cal.App.2d 123 [268 P.2d 529], at pages 130-131, as follows: "The evidence necessary to justify an order holding a defendant to answer to the superior court is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt. All that is required is a reasonable probability of the defendant's guilt. (*Davis* v. *Superior Court*, 78 Cal.App.2d 25, 27 [177 P.2d 314].) █ 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (*People* v. *George*, 95 Cal.App.2d 425, 429 [213 P.2d 33]; *People* v. *Thomas*, 90 Cal.App.2d 491, 494 [203 P.2d 567].)

█ "On motion to set aside the information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (*Weber* v. *Superior Court*, 35 Cal.2d 68, 69 [216 P.2d 871].) █ A court may not substitute its judgment as to the weight of

the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. ▮ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (*Lorenson* v. *Superior Court*, 35 Cal. 2d 49, 55-57 [216 P.2d 859].)''

▮ The only offense named in the order of commitment was a violation of section 459 of the Penal Code (burglary). But under section 739[1] of the Penal Code the district attorney was authorized to charge by information the commission of any offense disclosed by the evidence taken at the preliminary examination even though such offense was not specified in the order of commitment provided the offense charged was related to the transaction which was the basis for the commitment order. (*People* v. *Horton*, 191 Cal.App.2d 592, 597 [13 Cal.Rptr. 33].)

▮ . With respect to the first count which embodied the charge of burglary, the evidence was sufficient to sustain the inference that some person or persons had entered the building containing the gun room with the intent to steal the personal property of Mr. Childers. (See *People* v. *Jones*, 204 Cal.App.2d 722, 726 [22 Cal.Rptr. 499] ; *People* v. *Holley*, 194 Cal.App.2d 538, 540 [15 Cal.Rptr. 44] ; *People* v. *Owens*, 79 Cal.App.2d 290, 298 [179 P.2d 401].) That crime was complete when the building was entered with the requisite intent. The crime of theft was thereafter committed when the personal property was taken from the building. (See *People* v. *McFarland*, 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].)·

▮ When the corpus delicti is established by evidence other than extrajudicial statements of a defendant, the connection of that defendant with the crime may be proved by statements made by him. (*People* v. *Johnson*, 146 Cal.App.2d 302, 304 [303 P.2d 615].) ▮ The defendant admitted either that he or that one of the sons of the owner of the

---

[1]Section 739 of the Penal Code is in part as follows: ''When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed:'' · · ′

shotgun entered the room and brought out the shotgun.
■ Regardless of whether the person who entered that room had the consent of the owner to do so under other circumstances, an entry made with intent to steal the gun constituted burglary. (See *People* v. *Deptula,* 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430]; *People* v. *Corral,* 60 Cal. App.2d 66, 71 [140 P.2d 172]; *People* v. *Guareno,* 22 Cal.App. 2d 82, 84 [70 P.2d 504].) ■ The committing magistrate could reasonably draw the inference that the defendant was aware of the felonious purpose of the persons present with him at the Childers premises and that he acted in concert with them in the commission of the burglary whereby the shotgun was obtained. (See *People* v. *Wells,* 187 Cal.App.2d 324, 329-330 [9 Cal.Rptr. 384]; *People* v. *Bonilla,* 124 Cal.App. 212, 214 [12 P.2d 64].) Consequently, it was error to grant the motion made under section 995 of the Penal Code with respect to the first count.

■ In the third count the defendant was charged with grand theft. But there was no competent evidence upon which to base a finding that the personal property taken was of a value exceeding two hundred dollars. (See Pen. Code, § 487.) Mr. Childers, the owner, was not asked to express an opinion as to that subject in the course of his testimony. (Cf. *People* v. *Lenahan,* 38 Cal.App.2d 39, 41-42 [100 P.2d 515]; *People* v. *Haney,* 126 Cal.App. 473, 475 [14 P.2d 854].) The superior court did not err in granting the motion made under section 995 of the Penal Code with respect to that count. (See *People* v. *Coon,* 38 Cal.App.2d 512, 517 [101 P.2d 565]; *People* v. *Simpson,* 26 Cal.App.2d 223, 229 [79 P.2d 119].)

■ In the second count of the information the defendant was accused of the crime of receiving stolen property. The elements of that offense are (1) that the property found in the possession of the defendant was acquired by acts constituting theft or extortion, (2) that the defendant received, concealed, or withheld the property from the owner, and (3) that the defendant knew that the property was stolen. (*People* v. *Gould,* 111 Cal.App.2d 1, 4 [243 P.2d 809].) The testimony of Mr. Childers was sufficient to establish the first element. Moreover, there was evidence that the stolen shotgun was found in the defendant's possession. The problem remaining for consideration is whether there was sufficient evidence with respect to the third element.

■ The requisite guilty knowledge can be inferred from circumstantial evidence. (*People* v. *Scaggs,* 153 Cal.App.2d

339, 352 [314 P.2d 793].) "As stated in *People* v. *Lopez* (1954) 126 Cal.App.2d 274, 278 [4] [271 P.2d 874], '[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' 'False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge.' (*People* v. *Reynolds* (1957) 149 Cal.App. 2d 290, 294 [2] [308 P.2d 49]; . . .)" (*People* v. *Lyons*, 50 Cal.2d 245, 258 [324 P.2d 556]; see also *People* v. *McFarland*, *supra*, 58 Cal.2d 748, 754-755.)

 After his arrest the defendant gave an explanation of his acquisition of possession of the shotgun which was not only more detailed than his first explanations but was inconsistent with those earlier explanations with respect to the matter of guilty knowledge. The later statement, regardless of the truth of the assertions therein contained, was sufficient to throw doubt upon the reliability of the earlier explanations which were rooted in a claim of innocence of wrongdoing on the part of the defendant. In the absence of a satisfactory explanation by the defendant as to his possession of the stolen article, an inference of guilty knowledge was warranted. (See *People* v. *Juehling*, 10 Cal.App.2d 527, 531 [52 P.2d 520].) Consequently, with respect to the second count it was error to grant the motion.

The order is affirmed with respect to the third count and is reversed as to the first and second counts which contain, respectively, the accusation of the commission of the crime of burglary and the accusation of the commission of the crime of receiving stolen property.

Shinn, P. J., and Files, J., concurred.