SHINN, P. J.
 

 Appellant and defendant Willis were jointly accused by information with one count of bookmaking, a second count of occupying a building containing betting paraphernalia for the purpose of recording or registering bets, and appellant was further charged in Count III with a violation of Penal Code section 337a, subdivision 5, in that she permitted Willis to occupy the premises for bookmaking purposes. To these charges appellant pleaded not guilty.
 

 In a non jury trial appellant and defendant Willis were found guilty as charged in the second count and not guilty as to Counts I and III. Proceedings were thereupon suspended and appellant was granted probation for five years, one of the conditions thereof being that she pay a fine of $250. Appellant’s motion for a new trial was denied and the court pronounced judgment of conviction. This appeal is from the judgment of conviction (order granting probation).
 

 One James Kline, a Deputy Sheriff of the County of Los Angeles, was the arresting officer and one whose testimony was most significant in leading to appellant’s conviction. He testified that he had heard “rumbles” or rumors along Central Avenue in Los Angeles that certain stores were engaged in bookmaking activities. He went to the vice detail files in his office and after a careful perusal of these files came to entertain a strong suspicion that bookmaking was being con
 
 *519
 
 ducted at 8456 South Central Avenue. This information coupled with the “rumbles” he had heard led him and some fellow officers to investigate the above location.
 

 The subject store was located in a commercial building and it was licensed to do business as a smoke and tobacco shop and was open to the public. On January 21, 1961, Kline and two other deputies went to the store at about 3 p. m. and commenced a surveillance which lasted 20 minutes. During the course of their observation they noted that four or five people entered the store. Kline testified that none of these people appeared to have in his possession paraphernalia commonly connected with bookmaking in the Los Angeles area.
 

 The officers went to the store, opened the front door and walked in. Immediately inside the front door was a portion of the store containing a glass counter and an old cash register. There was no one in this front section nor did the premises appear to be those of a store engaged in commerce. Behind the glass counter was a wooden partition containing a glass window and a doorway. The glass counter ended short of the doorway, which was not obstructed by a door or curtain. There were some used articles in the glass counter but none of the merchandise appeared to be for sale.
 

 As the officers opened the front door and entered Kline heard a voice from the rear of the store say, “The cops are here” or “coming.” Kline was unable to ascertain whether the voice was that of a male or female. Looking through the glass window in the wooden partition separating the two portions of the store he observed the upper part of the body of the defendant Willis. Kline walked toward the open doorway, held his identification in his hand and said, “Sheriff’s Office.” When he was partially through the doorway he noticed Willis wiping a formica table top with a sponge although his view was partially blocked by a coke machine. There was expert testimony to the effect that such table tops and sponges are commonly used in the Los Angeles vicinity temporarily to record bets until one who records these bets permanently telephones in and takes them down. This method is commonly employed so that when police officers attempt to make an arrest the betting markers can be quickly and thoroughly destroyed.
 

 As he entered the rear portion of the store Kline observed Willis lunge toward the corner of the room and place his hand in a hole in the plaster. Willis was placed under arrest, the hole was investigated and $174 retrieved therefrom. There
 
 *520
 
 were four or five other persons in the room sitting on a couch, some of whom had racing forms or scratch sheets which they attempted to place under the couch as the officers entered the room. On top of the formica table Kline observed a marked racing form and some cigarette papers containing impressions of letters and numbers which appeared to be recordings of horse-race wagers. Kline asked Willis who was in charge and he pointed to appellant Davis. Appellant was asked if she was in charge and she replied that she managed the place. She was then placed under arrest. She stated to the officers that she did not write the bets on the cigarette papers but that all her bets had been recorded on the table. She said $74 of the money found in the wall was from bets taken that day. She stated: “You know: I’m bookmaking in here, but you didn’t have enough evidence on me.” The officers had no search warrant directed to these premises nor did they have any knowledge of a warrant of arrest for either of the defendants although such a warrant had in fact been issued.
 

 Appellant’s sole contention is that the trial court committed prejudicial error in admitting the racing forms and betting markers into evidence. She maintains that they were obtained as the result of an illegal search and seizure.
 

 Since the store was ostensibly open to the public for. commercial purposes it was patently clear that the officers legally entered the premises. The presence of other people entering the store bolsters this conclusion.
 
 (Thorp
 
 v.
 
 Department of Alcoholic Beverage Control,
 
 175 Cal.App.2d 489, 492 [346 P.2d 433].) Whether the officers had reasonable or probable cause to believe that illegal bookmaking activities were being conducted on the premises turns on the information available to them before the entry and arrest.
 

 “Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.”
 
 (People
 
 v.
 
 Ingle,
 
 53 Cal.2d 407, 412 [348 P.2d 577].)
 

 In the instant case the evidence indicates the existence of a number of factors which, when coupled together, gave the officers such necessary probable cause. These factors included knowledge garnered by Officer Kline from the vice detail files of past bookmaking activities at the store; information from numerous' anonymous sources that such activities were still continuing, and furtive acts by persons in the store
 
 *521
 
 which occurred as the officers entered the front door and as they observed those persons in the rear portion of the store.
 

 It is well established that police officers may rely on information coming to them from official sources
 
 (People
 
 v.
 
 Gorg,
 
 157 Cal.App.2d 515, 520 [321 P.2d 143] ), and while it is true that anonymous information in and of itself is insufficient to constitute probable cause for arrest, such information corroborated by additional facts may be considered as a factor going to probable cause.
 
 (Willson
 
 v.
 
 Superior Court,
 
 46 Cal.2d 291, 294 [294 P.2d 36].) In addition, the facts that the officers heard someone yell
 
 ‘ ‘
 
 The cops are here ’ ’; that while Officer Kline was in the doorway to the rear portion of the store he observed Willis wiping off the table top with a sponge and saw others seated on the couch attempting to hide scratch sheets, gave ample cause when coupled with the other factors for the officers to make an arrest. (See
 
 People v.Tahtinen,
 
 50 Cal.2d 127, 134 [323 P.2d 442].) Further appellant’s admission that she was the manager of the place, coupled with other circumstances then existing, constituted probable cause for her arrest.
 
 (People
 
 v.
 
 Rios,
 
 46 Cal.2d 297, 298-299 [294 P.2d 39].) The seizure of marked racing forms and betting markers was incidental to a valid arrest and hence such articles were properly received in evidence.
 
 (Willson
 
 v.
 
 Superior Court, supra,
 
 46 Cal.2d 291, 294.)
 

 The judgment is affirmed.
 

 Ford, J., and Files, J., concurred.