[Crim. No. 4420. First Dist., Div. Two. May 15, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CLIFFORD KENNETH SCHELLIN, Defendant and Appellant.

Hall & Buchignani, Alvin G. Buchignani, Alfred C. Cavagnaro and Roy C. Hall for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—This is an appeal from a denial of defendant's motion for a new trial and from a judgment of conviction rendered on a jury verdict finding the appellant, C. K. Schellin, guilty of burglary. The sole contention is that certain evidence was erroneously admitted as it was secured by an unlawful search and seizure.

As no questions are raised concerning the sufficiency of the evidence to sustain the judgment, a brief summary of the facts concerning the offense will suffice. Appellant and his codefendant Hawvichorst were found guilty of two burglaries in Napa County; the first occurred on March 8, 1963, at Levinson's Drug Store in the City of Napa; the second, on March 15, 1963, at The Grapevine Inn on the St. Helena Highway north of Yountville. Both were arrested in Napa on March 15, in Hawvichorst's car which contained a number of items stolen from The Grapevine Inn and some of the tools used in the drug store burglary. An accomplice, one Vierra, testified for the prosecution about their participation in the drug store burglary. Hawvichorst denied the drug store burglary but admitted The Grapevine Inn burglary. Hawvichorst testified that on March 14, he and the appellant had been drinking together all day and went for a ride about 8:30 or 9 p.m. Appellant's defense was based on Hawvichorst's testimony that he had committed The Grapevine Inn burglary alone while the appellant remained in the car, unconscious from an asthma attack.

We now turn to the facts concerning the arrest of the appellant and Hawvichorst and the search in question. On March 15, 1963, about 2:30 a.m., Sergeant Meyer, the deputy sheriff in charge of the investigation detail in Napa County, received a call from his office at his home. The Napa sheriff's office had been advised by Sergeant Dahl of the Intelligence Unit of the Oakland Police Department that they had observed a vehicle with known burglary suspects going north on the freeway on the evening of March 14. The information supplied by the Oakland police was that two or three male subjects in a 1960 Nash Rambler were intent on burglarizing a place that contained a safe on the highway north of Napa. The license number of the vehicle was given.

Sergeant Meyer immediately got dressed and drove his car

north on the St. Helena Highway to Rutherford. Since he did not observe anything unusual, he turned around, returned to the Thomas Garage, parked and radioed for the night patrol. It was then about 3:15 or 3:30 a.m. A short time later, two night patrolmen arrived at the Thomas Garage. The three officers parked in a position to view the traffic on the two-lane highway. There was little southbound traffic on the highway at that time.

A few minutes later, a southbound vehicle slowly came by. The officers turned on their headlights and observed a Nash Rambler with two men in the front seat and what appeared to be a piece of furniture or a cabinet in the back. The officers followed the vehicle in order to check the license number. They noted that the license number corresponded with that supplied by the Oakland Police Department, that the vehicle appeared to be heavily loaded and sagged to the left in the rear. The officers continued to follow and radioed the Napa Police Department for assistance. At about 4 a.m., five police units stopped the Nash near the west end of Marshall Bridge. The car pulled over as soon as the red light and siren were turned on.

Sergeant Meyer got out of his car and walked to the Nash on the driver's side, leaving instructions with Deputy Robinson to be careful in approaching the vehicle on the passenger side and to be sure nothing was thrown out. As Meyer walked to the car, he looked in the back to see if anyone else was in the car. He observed a television set on the back seat of the car and two pry bars on the floor on the right side near the door. When Meyer asked the occupants of the Nash to get out on the driver's side, both of them did. Hawvichorst, who had been driving, got out first rather reluctantly and slowly. Hawvichorst was asked for his name and a check was made on the registration of the Nash. No questions were asked about the television set. The appellant was not interrogated.

The appellant and Hawvichorst were handcuffed and taken to the Napa police station, while another officer drove the Nash to the sheriff's office. Appellant then accompanied Sergeant Meyer to the sheriff's office and placed his personal property on the booking counter. When Sergeant Meyer asked him if the keys on the counter were keys to the Nash, appellant replied they were not and that they were his keys. Meyer then asked: ''Then you don't mind if I try them.'' Appellant replied: ''No, they don't fit.'' Meyer interpreted this remark to mean that the appellant did not object and he opened the trunk of the Nash by using the appellant's keys.

The trunk was heavily loaded with assorted merchandise and tools: the former included whiskey, cartons of cigarettes, several sticks of salami and some vociferous cheeses; the latter included a power drill, numerous wrenches, a large drill bit, a heavy ax-ended hammer and a brace with a bit attached, rope, some gloves and a pair of binoculars.

Sergeant Meyer with several deputies proceeded northbound on the highway to ascertain whether any establishment had been victimized. Eventually, they arrived at The Grapevine Inn north of Yountville and observed that the door on the south side of the building had been forced open. The interior was in a state of shambles with the juke box broken into, the television lead-in wire broken and the set missing. Papers were strewn on the floor behind the bar and in the office. In the kitchen, several sacks of potatoes had been dropped on the floor and the walk-in refrigerator door was ajar. The lock on a small cabinet had been broken and pry marks were visible on a door leading into a storeroom.

At about 6 a.m., the police notified Reams, temporary manager of the inn, of the burglary. Reams immediately came to The Grapevine Inn and noted that six to eight cases of liquor, cigarettes, salami, other meats and cheeses, the television set, the money in the juke box and a flashlight were missing. The items found in Hawvichorst's car were identified as the missing items. Subsequently, it was established that the screwdriver and some of the other tools found in the Nash had been used in the March 8, 1963, burglary of Levinson's Drug Store.

Hawvichorst's testimony concerning the circumstances of the arrest completely substantiated the above except for two details: Hawvichorst stated that he got out of the car immediately and that a young deputy sheriff grabbed him and threw him over the hood.

The trial court found that the officers had reasonable cause to arrest and that the subsequent search of the automobile was a reasonable search incident to the arrest.

 As the arrest and search were made without a warrant, the burden rested on the prosecution to show proper justification (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal. Rptr. 47, 381 P.2d 927]). A peace officer may make an arrest without a warrant whenever ". . . he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed" (Pen. Code, § 836, subd. 3).

■ "A search made as an incident to a lawful arrest, that is one based upon reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant" (*People* v. *Esters*, 220 Cal.App.2d 917, 920 [34 Cal.Rptr. 264]).

■ Reasonable or probable cause for arrest without a warrant requires such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicion that the person arrested is guilty of crime (*People* v. *Tyler*, 193 Cal.App.2d 728 [14 Cal.Rptr. 610]). ■ As there is no exact formula for the determination of reasonable cause, each case must be determined on its own facts and circumstances (*People* v. *Nebbitt*, 183 Cal.App.2d 452 [7 Cal.Rptr. 8]). ■ In determining whether the arresting officer had reasonable cause to believe that the person arrested had committed a felony, the court looks only at the facts and circumstances presented to the officer at the time he was required to act (*People* v. *Ferguson*, 214 Cal.App.2d 772 [29 Cal.Rptr. 691]).

■ At the time the vehicle occupied by appellant and his companion was stopped, the officers had information, received about 2:30 a.m. from the Oakland Police Department, that the Oakland police had observed a 1960 Nash Rambler containing two or three burglary suspects going northbound on the freeway toward Napa and that they had been informed that the suspects intended to burglarize a place with a safe located north of that city. Later, between 3 and 4 a.m., a vehicle meeting the exact description and license number supplied, was observed traveling southbound toward Oakland on a sparsely traveled two-lane rural highway near Napa. The vehicle was traveling slowly with its two occupants in the front seat and a piece of furniture or a cabinet in the back; it was heavily loaded and sagging to the left in the rear. The appearance of the vehicle was clearly corroborative of the information supplied by the Oakland police. Under these circumstances, it was eminently reasonable for the officers to believe that the occupants of the vehicle had committed a burglary and were returning to Oakland and the officers had probable cause to make the arrest. We conclude that the search was a proper and reasonable one incident to the lawful arrest and that the trial court properly admitted the evidence in question.

*People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], and other authorities cited by the appellant to

argue lack of probable cause, are not relevant, as the information known to the officers and the circumstances observed in those cases were of such a general nature that they fell short of probable cause. Here, the information was precise and specific and completely corroborated by the circumstances observed by the officers at the time they stopped the vehicle.

Appellant argues that the information supplied by the Oakland Police Department is to be viewed as information from an informant of unknown reliability which cannot be the basis of a lawful arrest and search. It is well settled that police officers may rely on information coming to them from official sources (*People* v. *Davis,* 205 Cal.App.2d 517 [23 Cal.Rptr. 152]) as well as other known reliable sources (*People* v. *Esters,* 220 Cal.App.2d 917 [23 Cal.Rptr. 264]) ; *People* v. *Stewart,* 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879] ; *People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856]). The information provided by one police department to another must be presumed reliable unless it is manifestly shown to be otherwise. There were no indicia of unreliability here. The direct observation of the suspects going north on the freeway made by the Oakland police themselves was corroborative of the other information given them, and lent credence to the total intelligence imparted to the Napa sheriff's office (*People* v. *Lovio,* 189 Cal.App.2d 427 [11 Cal.Rptr. 162]). The fact that The Grapevine Inn burglary was not discovered and the arrestees connected to the drug store burglary until after the arrest and search is of no significance as the test is whether the officers had reasonable grounds to believe that a felony had been committed, and not whether the felony was in fact committed (Pen. Code, § 836, subd. 3).

In view of our conclusions that the officers had reasonable cause to arrest and search the vehicle at the time it was stopped, we need not discuss appellant's remaining contentions relating to the exact time when the arrest occurred.

The appeal from the order denying defendant's motion for a new trial is dismissed.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1964. Traynor, J., and Peters, J., were of the opinion that the petition should be granted.