[Crim. No. 4729.   First Dist., Div. One.   May 7, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. CARLTON BRICE et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Michael R. Marron and Jennifer L. Bain, Deputy Attorneys General, for Plaintiff and Appellant.

Richard A. Bancroft, John D. Nunes, Public Defender, R. Donald Chapman, Chief Assistant Public Defender, and James R. Jenner, Assistant Public Defender, for Defendants and Respondents.

SULLIVAN, P. J.—Defendants were charged in an information with robbery. (Pen. Code, § 211.) Their motion to set aside the information was granted (Pen. Code, § 995) and the People appeal.

At the preliminary hearing Sam Pedone, the manager of a bar, testified that on March 9, 1964, at about 1 p.m., he went to the Bank of America at 5920 San Pablo Avenue, Oakland, to cash some checks and obtained $1,668 in cash, including $1,500 in currency, 100 silver dollars, four rolls of quarters and four rolls of dimes. He placed the money in an ordinary grocery bag and got into his car in the parking lot of the bank. Two men approached him, one with a pistol and the other with a sawed-off shotgun. The former demanded that Pedone hand over the money, took the bag and ran across the parking lot towards 60th Street. The latter, after holding Pedone with the shotgun, ran off in the opposite direction. According to Pedone, the man with the pistol wore a dark blue suit; the man with the shotgun wore a light brown sweater or jacket.

James Clark Williams testified that on March 9, 1964, at about 1:15 p.m. he was riding as a guest in the right front seat of an automobile on San Pablo Avenue near 60th Street. After Williams' car had made a right turn onto 60th Street and had proceeded about halfway up the block, the witness saw a Negro run out of the parking lot and up the street on the right side of 60th Street. According to the witness, the man was five feet seven or eight inches tall, of stocky build and wearing a dark suit. Williams did not see if he was carrying anything but he "heard coins jingling, sounded like coins jingling." He then saw the man cross 60th Street at Herzog, cross Herzog to the east side of the street and walk up to a parked car which had just pulled up. Williams described the car as a red and white 1955 or 1956 Buick, which he had just seen driven across the intersection of 60th and Herzog. He saw the car pull to a stop and its sole occupant, a Negro, whom he identified as defendant Brice, get out of the car and walk across Herzog Street and stand there.

At this point Williams' car was proceeding away from the Buick. Looking back, Williams saw the Negro, whom he had seen running out of the parking lot, look into the parked Buick and get into it. The Williams car then made a U-turn and came back up Herzog Street. Williams saw Brice standing in front of an apartment building and the other Negro driving off in the Buick. Williams and his driver followed the car while

it turned right on 61st, where it suddenly stopped, the door opened, and a third Negro who had been running up the street jumped into the car. This man was wearing a light-colored trenchcoat or overcoat. On the same day Williams reported what he had seen to a police officer standing in the bank parking lot.

Officer Carlo Cristiani of the Emeryville Police Department testified that on March 9, 1964, at about 1 p.m. he was off duty, in plain clothes and driving a Chevrolet pickup in a northerly direction on San Pablo near 59th Street. As he approached the bank, he noticed a number of people standing in front of the parking lot looking into the yard of the bank. Sensing "something was wrong" he proceeded north, made a right turn onto 61st Street, drove east to Herzog and then made a right turn on Herzog to go south. As he turned the corner, he saw a red and white Buick parked on the east side of Herzog. The officer saw a Negro, whom he identified as defendant Brice, get out of the Buick and walk in front of the pickup to the west side of the street.

As Cristiani continued south on Herzog, he saw another Negro who had been walking north on the east side, open the door of the Buick on the passenger side, look around, get in the car, and close the door. According to the officer, this man was about five feet seven inches tall, weighed about 145 to 150 pounds, "had heavy cheek bones," was wearing either a brown sweater or brown jacket and was carrying a grocery bag tucked underneath his arm with his hands inside his sweater. When this man got into the Buick, Brice was on the west side of Herzog, "looking right across the street at the car." Cristiani wrote down the license number of the Buick (AXS 791), checking both front and rear license plates. He then returned to the bank parking lot where, learning of the robbery, he gave the foregoing information to a police officer.

Fletcher L. Drake, defendant Brice's uncle, testified that he resided at 998-54th Street, Oakland, and that Brice lived there with him. Drake stated that on March 9 (the day of the robbery) at about 8 a.m. Brice was in the house and a person named "Sam," identified by the witness as Andrews, called at the house in a Buick to pick up Brice. The two men then left in the car which had a red body and a white or cream-colored top. The witness did not see Andrews again that day but Brice returned to the house for a while around 1 p.m. About 10 or 15 minutes after Brice went out again,

Inspector Zweigle of the Oakland Police Department appeared.

Defendant Brice surrendered himself to the police later in the day on March 9. Defendant Andrews was arrested on March 10 at about 11:45 a.m.

The following testimony of Inspector Zweigle was admitted to establish that Andrews' arrest although without a warrant was made upon probable cause: The inspector arrived at the scene of the robbery on March 9 at about 1:25 p.m. Upon investigation, he ascertained that the robbery had been committed by two male Negroes who were armed, that there had been an automobile licensed AXS 791 "around the corner," that a male Negro had been seen getting out of the car and a male Negro had been seen getting in the car, picking up another male Negro around the corner and leaving the scene. He thereafter ascertained that the registered owner of the car was Carlton Brice, residing at 998-54th Street, Oakland, about six blocks from the scene of the robbery.

Within a short time, the inspector testified, he went to the 54th Street address where he learned from Fletcher Drake that Brice had just left. Drake also told Zweigle that at about 8 a.m. that day a person named Sam had called after Brice in a red and white Buick and that both men had left together in the car. At about 7 p.m. that day, the inspector had a conversation with Brice who had already surrendered himself. Zweigle asked Brice who "Sam" was, Brice told him that he was Sam Andrews, and Brice identified a photograph of Andrews as the person who had bought his car. At that time, Zweigle knew that Andrews had been convicted of a holdup in 1959, had been sentenced to San Quentin, and had been released on parole.

The inspector further testified that on the following day, March 10, he received information that a red and white Buick, license number AXS 791, was parked on 23rd Street near San Pablo Avenue. He dispatched two inspectors to "stake out" the car, who were later relieved by Sergeants Jones and Sever. Zweigle spoke to Jones, showed the latter a photograph of Andrews and ordered him to arrest Andrews if the latter approached the car.

Sergeant Jones testified that on March 10 at about 11 a.m. he, together with Sergeant Sever, went to the intersection of 23rd and Grove Streets in Oakland. The officers located the Buick and staked it out. At about 11:45 a.m., Jones saw a man walk from the sidewalk around to the street side of the

car and get in. He was carrying a small suitcase and an overnight toilet kit which he placed on the rear seat of the car. Another person (later identified as Andrews' "girl friend") entered the car on the curb side at the same time. Sergeant Jones, recognizing Andrews, approached the car on the street side, and addressing Andrews by name, ordered him to get out and placed him under arrest. The officer then searched the suitcase and the kit, finding in the latter "a considerable number of silver dollars." Jones then radioed Inspector Zweigle, who came to the scene, searched defendant, found $245 on defendant's person, and counted 34 silver dollars in the toilet kit. The officers had no warrant for Andrews' arrest or for the search of his person or automobile.

Evidence was also received at the preliminary hearing of certain statements made by Brice and Andrews to the police. We discuss this in detail *infra*.

Although the minute order granting defendant's motion under Penal Code section 995 and setting aside the information states no grounds for the court's action, the transcript of the hearing of the motion indicates a belief on the part of the court that under the decisions in *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658] and *People* v. *Gibson* (1963) 220 Cal.App.2d 15 [33 Cal.Rptr. 775], while the police may have had probable cause to temporarily detain Andrews for questioning (a course they did not pursue), they lacked probable cause for arresting him. As a result the court apparently reasoned that evidence obtained as a result of the arrest and incidental search was illegally secured and that such evidence was indispensable to establishing reasonable cause for holding both defendants to answer.

The Attorney General contends on appeal that there was probable cause for the arrest of Andrews and sufficient evidence to justify holding both defendants to answer the charge of robbery. Defendant Andrews contends that although there may have been adequate reason to detain him for further investigation, the police lacked sufficient reason for an actual arrest; that his subsequent statements made to them were "tainted" and inadmissible; and that the evidence "exclusive of the search of Andrews and his admissions" was insufficient to support the magistrate's commitment. Defendant Brice contends that the extrajudicial statements of both Andrews and Brice were inadmissible against the latter; that the testimony of Inspector Zweigle "must be disregarded

as to Brice''; that the ''consequences'' of the illegal arrest and search of Andrews were inadmissible against Brice; and that excluding the allegedly incompetent evidence, the remaining evidence was insufficient to justify holding Brice to answer.

We first proceed to consider the legality of Andrews' arrest and of the evidence secured as a result of it. We will thereafter consider the admissibility of the extrajudicial statements of both Brice and Andrews. Finally, we propose to determine the sufficiency of the competent evidence to support the magistrate's commitment of both defendants.

''An arrest without a warrant can only be legally made if the person arrested has committed a public offense in the presence of the arresting officer or if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535] ; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].)'' (*People* v. *Privett* (1961) 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) ■ ''Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.]'' (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. denied 364 U.S. 841 [81 S.Ct. 79, 5 L.Ed.2d 65]; *People* v. *Torres* (1961) 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823], cert. denied 369 U.S. 838 [82 S.Ct. 866, 7 L.Ed.2d 842]; *People* v. *Fischer* (1957) 49 Cal.2d 442, 446 [317 P.2d 967].) ■ ''A search which is made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant [citations], and even though it occurs before rather than after the arrest. [Citations.]'' (*People* v. *Hammond* (1960) 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289] ; *People* v. *Ingle, supra*; *People* v. *Torres, supra.*) ■ It is settled that in the absence of a pressing emergency, an arrest without a warrant may not be based solely upon information received by the police from an informant not known to the arresting officers, or if known, not known to be reliable. (*Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36] ; *People* v. *Reeves* (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393] ; *People* v. *Bates* (1958) 163 Cal. App.2d 847, 851 [330 P.2d 102] ; *People* v. *Burke* (1962)

208 Cal.App.2d 149, 155-156 [24 Cal.Rptr. 912]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 487 [34 Cal.Rptr. 5].)

■ In determining whether there is probable cause, each case must be decided on its own facts and circumstances. (*People* v. *Ingle, supra*, 53 Cal.2d 407, 412.) ■ As this court said in *People* v. *Bates, supra*, 163 Cal.App.2d 847, 851: "The test is, did the officer have reasonable cause to make the arrest—would a reasonable man, possessing the information possessed by the officer, reasonably believe that the person involved had committed a felony?" The question of probable cause to justify the defendant's arrest and search must be tested upon the facts which the record shows were known to the officers at the time the arrest was made. (*People* v. *Privett, supra*, 55 Cal.2d 698, 701; *People* v. *Jackson* (1958) 164 Cal.App.2d 759, 761-762 [331 P.2d 63].) ■ Evidence relevant on the issue of probable cause for arrest is not limited to that which would be admissible at the trial on the issue of guilt. (*People* v. *Boyles* (1955) 45 Cal.2d 652, 656 [290 P.2d 535]; *People* v. *Ingle, supra*, 53 Cal.2d 407, 413; *People* v. *Bates, supra*; *People* v. *Burke, supra*, 208 Cal.App.2d 149, 155.) "The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial." (*People* v. *Ingle, supra*, 53 Cal.2d 407, 413; *People* v. *Fischer, supra*, 49 Cal.2d 442, 446.) As was said in *Fischer*: "Probable cause may exist even though there may be some room for doubt." (P. 446.)

■ We have pointed out that at the time of Andrews' arrest, Inspector Zweigle had information that armed robbery had been committed by two male Negroes and that a red and white Buick bearing license number AXS 791 had probably been used as the getaway car. He had also learned from Brice that Andrews was the owner of the car and from Drake, Brice's uncle, that Andrews had called after Brice in a red and white Buick that morning. Thus information from two sources, admittedly not known to be reliable but nevertheless consistent, connected Andrews with the getaway car on the day of the robbery and despite registration of the car in Brice's name, indicated Andrews' connection with the car was that of an owner or tantamount thereto. Independent information from eyewitnesses also indicated not only that the robber with the bag of money entered the Buick on Herzog Street but also that he drove the car away immediately and without any apparent difficulty. This circumstance would

warrant the conclusion that the robber had some preexisting connection with the car giving him possession and control of it, particularly since the person (identified as Brice) who had just parked the car was then standing across the street and, according to Officer Cristiani, watching the entire incident without any objection or remonstrance.

Zweigle's information therefore would warrant an honest and strong suspicion that the crime had been committed by a person having possession and control of the Buick on the day of the robbery, since the inspector had received no information that the car had been stolen. Obviously the robber entering the car was not Brice, its registered owner, who was standing on the opposite curb. Andrews had not been identified at the scene. There was good reason to suspect that the robber driving away the Buick was a person who then had possession and control of it and who was probably known to Brice who watched him drive away without at any time notifying the authorities that the Buick just sold by him to his friend had been stolen. To some extent this last circumstance corroborated the information received by Zweigle from both Drake and Brice that the car belonged to Andrews but if it lacked the probative force to induce a strong suspicion, such deficiency was furnished by the climactic episode in the case. The inspector had sufficient information to entertain a strong suspicion that Andrews was guilty of the robbery if it was true that the latter was in possession and control of the car, thus corroborating the information from the two untested informants Brice and Drake. The significance of this is pointed up by the inspector's action when informed that the getaway car was parked at 23rd and San Pablo. He did not order the officers on the "stake out" to arrest *anyone* entering the Buick. Nor had he ordered the arrest of Andrews *regardless* of where the latter was found. On the contrary he ordered the arrest of Andrews *if the latter approached the getaway car*. When Sergeant Jones saw Andrews enter the car and get behind the wheel the information in the possession of the police, including that obtained from Drake and Brice, was sufficiently corroborated to justify the arrest. A further corroborative circumstance was that Andrews was then leaving with a suitcase and kit in hand. We are satisfied that the foregoing information in possession of the police at the time of the arrest, together with the above circumstances observed by them at that time, afforded the officers reasonable cause to arrest Andrews and to make a reasonable incidental search

of his person and his car.[1] The products of the search were not illegally secured.

*People* v. *Mickelson, supra,* 59 Cal.2d 448 and *People* v. *Gibson, supra,* 220 Cal.App.2d 15, which appear to have had a persuasive influence on the court below, are clearly distinguishable on their facts from the case before us. It is noteworthy that defendant Andrews, whom the point principally affects, merely argues that the above cases afford "useful tools in measuring the quantum of evidence necessary to found probable cause" while defendant Brice makes no mention of the cases. In *Mickelson* the arresting officer, upon investigating the robbery of a market, was told that the robber was a fairly tall white man of large build with dark hair, wearing a red sweater and armed with an automatic. Twenty minutes later and six blocks away he stopped and arrested the occupants of a station wagon which had been driving erratically merely because the driver appeared to be a large white man with dark hair wearing a red sweater or jacket and the passenger appeared to be bending back and forth, and despite the fact that the officer had no information that the robber had a car or a confederate. In *Gibson,* robbery of a gas station was committed by a man with a blondish mustache wearing a black hat, brown coat and sunglasses. A short time later but some 47 blocks away, the police arrested defendant because he was similarly garbed, appeared to be driving in an unusual manner, failed to respond promptly to the police siren, and was in possession of sunglasses. We there held that situation was not substantially different from that in *Mickelson* and concluded as the court did in *Mickelson* that a general similarity in description involving garb not uncommon in a large metropolitan area was insufficient to constitute probable cause for arrest. As

[1]We decline the Attorney General's suggestion to consider as of probative value the fact that defendant Andrews was on parole from commitment under a prior conviction for robbery. Citing *Whaley* v. *Jansen* (1962) 208 Cal.App.2d 222 [25 Cal.Rptr. 184] and *People* v. *Wickliff* (1956) 144 Cal.App.2d 207 [300 P.2d 749], the Attorney General asserts that such past conduct and character is relevant in determining probable cause but neglects to point out *how in the instant case* such conduct is significant. While a criminal record may be relevant on the issue of probable cause, such a record, standing alone, is not sufficient to constitute probable cause to believe that Andrews had committed robbery or any other felony (*People* v. *Sanders* (1956) 46 Cal.2d 247, 251 [294 P.2d 10]; *People* v. *Privett, supra,* 55 Cal.2d 698, 702; *People* v. *Zabala* (1963) 217 Cal.App.2d 550, 553-554 [31 Cal.Rptr. 712]) and was not here corroboration of the essential fact as to whether Andrews was one of the robbers. (See *People* v. *Reeves, supra,* 61 Cal.2d 268, 274.)

we have explained in detail, the validity of the arrest in the instant case does not rest upon such insignificant facts.

We turn to the respective contentions of both defendants that certain incriminating statements made by them to the police constitutes incompetent evidence which cannot be considered in support of the commitment. It is to be noted that the magistrate admitted the statements only against the defendant making them.

We first summarize the pertinent facts affecting defendant Andrews:

■ First: Inspector Zweigle testified that he arrived at the scene of the arrest at about 1:40 p.m. He found Andrews in the rear of a police car, handcuffed, and Andrews' girl friend in another police car. Andrews asked the inspector if they were going to arrest his girl friend, saying "You can let her go. She didn't have anything to do with this. I know I am going back. There is no use getting her involved in it." During the ensuing interrogation by the police, Andrews asked how they found out "it was him" and when Zweigle told him they had Brice in jail, Andrews rejoined: ."Oh, that figures."

■ Second: Andrews was then taken to police headquarters. Before he made the reported statement hereafter referred to, Andrews made certain oral statements revealed in the following testimony of Inspector Zweigle: "Q. [By the prosecutor] What did he tell you at that time? A. First he said he wanted to talk to his girl friend. Then we allowed him to speak to her. Then I told him, 'You confessed last time, Sam. Why don't you just cop right out and we will get this whole thing over with?' He replied, 'Well, I just can't flat out cop out right away. First, I'll have to see some people point the finger at me, and then I'll probably cop out and then, on the other hand, I might not cop out at all.' " Andrews' answer is incriminating in nature. (In respect to the incriminatory character of the phrase "cop out" see the opinion of this court in *People* v. *Moore* (1963) 211 Cal.App. 2d 585, 599 [27 Cal.Rptr. 526].)

Third: Thereafter on the same afternoon a statement was taken from Andrews in response to questions by the police, recorded in shorthand and transcribed. This statement was read into evidence. It covers approximately 10 pages in the transcript of the preliminary hearing and discloses that the interrogation lasted for 23 minutes. While it includes exculpatory statements, it contains an admission by Andrews

of ownership of the Buick which he purchased from Brice on approximately February 24, 1964, and is at least to this extent incriminating.

We have concluded that the first statements set forth above do not fall within the exclusionary rule announced in *People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361][2] since the police were not then carrying out a process of interrogations and additionally the remark that Andrews' girl friend had nothing "to do with this" is obviously spontaneous.

On the other hand we have concluded that the second and third statements meet all the conditions of the *Dorado* rule, that such evidence in the light of the present record was inadmissible in the proceedings before the magistrate and that it therefore should not be considered in determining whether Andrews was committed without reasonable or probable cause.

As to defendant Brice, we have already pointed out that he voluntarily went to the police on March 9, 1964. He was thereupon taken into custody. A signed statement taken from Brice at the interrogation room of the police headquarters at about 9 p.m. on that day was read into evidence. The court however received in evidence only that portion of it relating that Andrews "came by" Brice's home on the morning of the robbery in the Buick which Brice had sold him. A second statement which Brice refused to sign was taken from him at the city jail on March 10 at about 3:40 p.m. This statement, while largely exculpatory in character, contained an admission by Brice that he was in the vicinity of 60th and Herzog Streets at the time of the robbery and that he had gotten in and out of the parked Buick, thus establishing his connection with the getaway car. Both of Brice's statements received in evidence were thus incriminatory. We have concluded that both of them meet all of the conditions of the *Dorado* rule, that in the light of the present record they

---

[2]Following the decision of the Supreme Court of the United States in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], the Supreme Court of California held in *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354, "that defendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights."

were inadmissible in the proceedings before the magistrate and that they should not be considered in determining whether Brice was properly held to answer.

We emphasize however that we hold *only* that *on the record now before us* the statements of both defendants should not have been admitted *at the preliminary hearing.* We express no opinion as to whether or not such statements may be properly received in evidence at the trial in the light of whatever evidence, foundational or otherwise, may be then and there introduced.

Finally we proceed to determine whether, exclusive of the foregoing statements of defendants, there was sufficient other evidence produced at the preliminary hearing to hold them to answer. ▆▆▆ Section 872 of the Penal Code requires the magistrate to hold a defendant to answer if ''it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, . . .'' Section 995 provides that the information must be set aside by the court in which the defendant is arraigned, upon his motion where the defendant has been ''committed without reasonable or probable cause.'' The phrase ''sufficient cause'' found in section 872 is equivalent in meaning to ''reasonable or probable cause.'' (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344]; *People* v. *Riley* (1963) 217 Cal.App.2d 11, 15 [31 Cal.Rptr. 404].)

▆▆▆ Reasonable or probable cause to hold a defendant to answer means ''such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.'' (*People* v. *Nagle, supra,* 25 Cal.2d 216, 222; in accord: *Perry* v. *Superior Court, supra*; *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459, 462 [15 Cal.Rptr. 65, 364 P.2d 241]; *Robison* v. *Superior Court* (1957) 49 Cal.2d 186, 188 [316 P.2d 1]; *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7-8 [291 P.2d 929]; *Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Riley, supra,* 217 Cal.App.2d 11, 15; *Callan* v. *Superior Court* (1962) 204 Cal.App.2d 652, 661 [22 Cal.Rptr. 508].) ▆▆▆ An indictment or information will not be set aside or a prosecution prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*De Mond* v. *Superior Court* (1962) 57 Cal.2d 340, 344 [19

Cal.Rptr. 313, 368 P.2d 865] ; *Bompensiero* v. *Superior Court, supra,* 44 Cal.2d 178, 183-184; *People* v. *Ketchel* (1963) 59 Cal.2d 503, 532 [30 Cal.Rptr. 538, 381 P.2d 394] ; *Callan* v. *Superior Court, supra,* 204 Cal.App.2d 652, 662.) ▉ It is settled that on a motion under section 995 to set aside the information it is not within the province of the trial court to weigh the evidence produced before the magistrate, resolve conflicts in it or pass upon the credibility of the witnesses. (*Perry* v. *Superior Court, supra,* 57 Cal.2d 276, 283-284; *People* v. *Jackson* (1956) 146 Cal.App.2d 553, 556 [303 P.2d 767] ; *People* v. *Perry* (1963) 216 Cal.App.2d 8, 10 [30 Cal. Rptr. 788].)

▉ We are satisfied that the competent evidence produced at the preliminary hearing was sufficient to lead the magistrate to believe and conscientiously entertain a strong suspicion that both defendants were guilty of the crime charged. In our determination of the legality of Andrews' arrest we have already analyzed in detail and need not here repeat the evidence connecting him with the robbery. In addition to this evidence, the record contains evidence as to the large amount of money found on his person and the 34 silver dollars found in his toilet kit as well as his first series of statements referred to above[3] which we have held properly admissible. As to Brice, the evidence already set forth as to his parking of the getaway car, and his other conduct at the scene of the crime, including his standing by while the robber drove the Buick away, generates a strong suspicion of his complicity.

The order is reversed.

Molinari, J., and Sims, J., concurred.

The petition of respondent Andrews for a hearing by the Supreme Court was denied June 30, 1965.

---

[3]These were his statements to the effect that he knew he was ''going back'' and that it ''figures'' the police found him through Brice.